

FILED
DEC 1 9 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH LINGLE, | ) |
| Plaintiff, | ) 07cv7130 |
| | ) **JUDGE LINDBERG** |
| v. | ) **MAG. JUDGE BROWN** |
| STAR NISSAN, INC., | ) |
| an Illinois Corporation | ) Plaintiff Demands a |
| | ) Trial by Jury |
| Defendant. | ) |

## COMPLAINT

Now Comes the plaintiff, Joseph Lingle, by and through his attorneys, Favaro & Gorman, Ltd., and for his Complaint against the defendant, Star Nissan, Inc., states and alleges as follows:

### PARTIES

1. Plaintiff Joseph Lingle (hereinafter "Lingle") at all times relevant hereto lived in Streamwood, Cook County, Illinois. He was employed by Star Nissan, Inc. (hereinafter "Star Nissan") in Niles Illinois in the capacity of Finance Director.

2. That defendant Star Nissan, Inc., is an Illinois Corporation in good standing. The acts and occurrences alleged herein occurred at the Star Nissan, Inc., in Niles, Cook County, Illinois.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked under the provisions of the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA") and 28 U.S.C. §1343.

4. Venue is proper in the Northern District of Illinois, Eastern Division. The parties reside and do business in this District and the acts and transactions alleged occurred within this District.

## PROCEDURAL POSTURE

5. On September 17, 2007, Lingle filed a charge of discrimination with the Equal Employment Opportunity Commission. A copy of said charge is attached hereto as Exhibit "A" and made a part hereof.

6. On September 26, 2007, Lingle received his Notice of Right to Sue. A copy of said Notice is attached hereto as Exhibit B" and made a part hereof.

## NATURE OF THE CASE

7. On or around May 15, 2000, Lingle began his employment with Star Nissan. At all times relevant hereto, Lingle was employed in the capacity of Finance Director.

8. Throughout all relevant times, Lingle performed his employment duties in a manner that met the reasonable expectations of Star Nissan.

9. Lingle has been diagnosed with diabetes.

10. Lingle began experiencing issues with his speech in the Summer of 2006.

11. As medical professionals attempted over the following months to determine what was causing Lingle's issues, they opined that Lingle was suffering from various ailments including an ear infection, myasthenia gravis ("grave muscle weakness"), stroke, etc..

12. During this time, Lingle apprised various individuals at Star Nissan about his health problems, e.g., diabetes and the various suspected causes. Those individuals included but were not limited to Michael Berman (Owner), Chuck Settles (Executive General Manager) and Elaine Swift (Comptroller/Human Resources).

13. On or about May 7, 2007 Lingle underwent a battery of medical tests. Following the testing, Lingle's health care providers told him they were 90% sure he had Amyotrophic Lateral Sclerosis (hereinafter "ALS"), commonly referred to as Lou Gerhig's Disease.

14. On or around this same date, Lingle informed Michael Berman (Owner) that Lingle's doctors believed he had ALS. At that time, Berman asked Lingle how long he would be able to work. Lingle told him "not to worry, I can do the job".

15. In late May 2007, Berman told Lingle that he had done research on ALS. He further stated that he knew it was terminal, and he was sorry.

16. On or around May 29, 2007, Lingle was officially diagnosed with ALS.

17. On or about June 25, 2007 at approximately 10:00 a.m., Settles (Executive General Manager) and Swift (Comptroller/Human Resources) called Lingle into Swift's office. At that time they told him:

- He should think about quitting;
- They could only offer him a data entry position;

3

- They wanted to put him on Family and Medical Leave;
- He needed to go home and think about the options given to him.

18. Following the meeting, Lingle went to Berman's (Owner) office and asked him if he really wanted to remove him from his position. Berman told him to "take the time to get better".

19. After Lingle's conversation with Berman, Lingle telephoned Roberta ("Robin") Lingle (his wife) to convey what had transpired. Following their conversation she attempted unsuccessfully to telephone Berman and Swift. Berman later telephoned her in response to the message she left him. During that conversation, Berman made statements to Roberta ("Robin") Lingle including but not limited to:

- "It broke his (Berman) heart to hear him (Lingle) talk";
- "I can't have him in finance";
- "I can't have him working with customers";
- "Lingle needs to take the FMLA leave".

20. On or about June 28, 2007, Lingle was forced to take two (2) weeks of vacation.

21. On or about July 9, 2007, Lingle tendered a doctor's note to Swift (Comptroller/Human Resources) stating that he was recently diagnosed with ALS, and he was able to return to work full-time without restrictions. At that time, Lingle requested that he be returned to work in his position of Finance Director.

22. On or about July 9, 2007, Lingle spoke to Berman (Owner) Lingle told him that his doctors' said he could perform his duties as finance director. Lingle also

stated he could work, and he could do his job. He also stated he would like a chance to do his job.

23. In response to his requests, Berman (Owner) told Lingle to take the Family and Medical Leave. He also repeated "I don't want you in finance".

24. Despite his physical issues and ultimate diagnosis of ALS, Lingle won performance contests in January 2007, February 2007, February/March 2007 and June 2007.

## COUNT I

## VIOLATION WITH THE AMERICANS WITH DISABILITIES ACT

Lingle restates and realleges as though fully set forth herein paragraphs 1 through 24 above.

25. Star Nissan, Inc., is an employer and covered entity as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et. seq.*

26. Lingle is an otherwise qualified individual with a disability or a perceived disability as defined by the ADA.

27. Star Nissan was required to discuss and reasonably accommodate, if necessary, Lingle's known or perceived disability and, by its actions described in paragraphs 17 through 23 above, failed to do either, choosing instead to terminate Lingle.

28. As a direct and proximate consequence of Star Nissan's unlawful and discriminatory termination of Lingle, Lingle has suffered, and continues to suffer, a loss of income, including salary and benefits, anguish and emotional pain and suffering.

Wherefore, plaintiff, Joseph Lingle, respectfully requests that this Honorable Court enter an Order for the following relief:

a. Star Nissan reinstate Lingle to his former position or to a comparable position with respect to pay, benefits and responsibilities, or if reinstatement is not practicable, Star Nissan compensate Lingle with front pay and reimbursement of all lost employee benefits;

b. Star Nissan make Lingle whole by paying for lost back pay and employee benefits;

c. Lingle be awarded the costs of this suit, reasonable attorneys fees, expert witness fees, and any other relief available under the Americans with Disabilities Act, including compensatory damages;

d. Any other relief which this Court deems appropriate.

## COUNT II

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

## (PUNITIVE DAMAGES)

Lingle restates and realleges as though fully set forth herein paragraphs 1 through 28 above.

29. Star Nissan is an employer and covered entity as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et. seq.*.

30. Lingle is an otherwise qualified individual with a disability or a perceived disability as defined by the ADA.

31. Lingle was subjected to a hostile work environment in that he was subjected to less favorable treatment than his similarly situated non-disabled counterparts.

32. As a direct and proximate consequence of Star Nissan's unlawful and discriminatory treatment of Lingle, Lingle has suffered and continues to suffer a loss of income, including salary and benefits, anguish and emotional pain and suffering.

6

33. Star Nissan willfully and wantonly took the actions against the Star Nissan with a reckless indifference to Lingle's rights.

Wherefore, plaintiff, Joseph Lingle, respectfully requests this Honorable Court enter an order for the following relief:

   a. Star Nissan reinstate Lingle to his former position or to a comparable position with respect to pay, benefits and responsibilities, or if reinstatement is not practicable, that Star Nissan compensate Lingle with front pay and reimbursement of all lost employee benefits;

   b. Star Nissan make Lingle whole by paying for lost back pay and employee benefits;

   c. Lingle be awarded the costs of this suit, reasonable attorneys' fees, expert witness fees, and any other relief under the Americans with Disabilities Act, including compensatory damages;

   d. An award of punitive damages; and

   e. Any other relief which the Court deems just and proper.

## COUNT III

## CONSTRUCTIVE DISCHARGE

Lingle restates and realleges paragraphs 1 through 24 above as though fully set forth herein.

34. After Lingle stated repeatedly that he wanted to and was capable of performing his job functions, provided medical documentation to Star Nissan that he was capable of performing his job without restrictions, and requested to be allowed to return to work, Star Nissan still refused to allow Lingle to perform his job. He was told his alternatives were to accept an internet data entry position at substantially less pay or he should quit.

35. As a result of the foregoing actions, Lingle was forced to leave his position of Finance Director and was thus constructively discharged.

36. Star Nissan's actions were willful and malicious and constituted a reckless indifference to Lingle's rights under Title VII, as amended.

37. As a result of the aforesaid, Lingle suffered and continues to suffer in that he experienced anxiety, humiliation ad embarrassment and has suffered and continues to suffer irreparable injury.

Wherefore, plaintiff Joseph Lingle, respectfully requests this Honorable Court enter an Order for the following relief:

a. Declare the actions complained of herein to be in violation of applicable law (Americans with Disabilities Act);

b. Enter an Order enjoining and permanently restraining these violations of the Americans with Disabilities Act and its amendments;

c. Star Nissan be ordered to compensate, reimburse and make Lingle whole for any benefits Lingle would have received had it not been for Star Nissan's illegal actions including but not limited to back pay and front pay;

d. An Order that Star Nissan pay an award to compensate Lingle for his pain and suffering and for the humiliation caused by the Star Nissan's unlawful treatment in an amount to be determined at trial;

e. Lingle prays for an award of punitive damages in an amount to be determined and which is appropriate pursuant to applicable law as amended to punish Star Nissan for the willful and malicious conduct necessary to deter Star Nissan from engaging in such misconduct in the future;

f. Lingle prays this Court award him costs and expenses of this action and award Lingle reasonable attorneys fees under the Americans with Disabilities Act;

g. This Court grant such additional and equitable relief as is just and proper.

## JURY DEMAND

Lingle demands a trial by jury on all issues properly submissible to a jury.

Respectfully Submitted,

Favaro & Gorman, Ltd.

By: _____
Dennis R. Favaro, one of the
plaintiff's attorneys

Dennis R. Favaro
Andrew H. Haber
Patricia L. Jochum
Favaro & Gorman, Ltd.
835 Sterling Avenue
Suite 100
Palatine, Illinois 60067
(847) 934-0060

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☑ EEOC | 440-2007-07919 |

_Illinois Dept. of Human Rights_ and EEOC
_State or local Agency, if any_

| NAME (Indicate Mr., Ms, or Mrs.)<br>Mr. Joseph Lingle | HOME TELEPHONE (include area code)<br>(630) 830-0725 | |
|---|---|---|
| STREET ADDRESS    CITY, STATE AND ZIP CODE<br>62 McKinley Lane, Streamwood, Illinois 60107 | | DATE OF BIRTH<br>6/28/1959 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one list below.)

| NAME Star Nissan, Inc. | NUMBERS OF EMPLOYEES, MEMBERS<br>15+ | TELEPHONE NUMBER (Include Area Code)<br>(847) 647-1555 | |
|---|---|---|---|
| STREET ADDRESS    CITY, STATE AND ZIP CODE<br>5757 West Touhy Avenue, Niles, Illinois 60107 | | | COUNTY<br>Cook |
| NAME | | TELEPHONE NUMBER (Include area code) | |
| STREET ADDRESS    CITY, STATE, AND ZIP CODE | | | COUNTY |

CAUSE OF DISCRIMINATION BASED ON (check appropriate box(es))

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☑ DISABILITY  ☑ OTHER (SPECIFY) Constructive Discharge

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA) LATEST (ALL)
June 28, 2007 - July, 2007
☑ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

**See Attached Addendum**

RECEIVED EEOC
SEP 17 2007
CHICAGO DISTRICT OFC

☐ I also want this charge filed with the administrative agencies. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedure.

I declare under penalty of perjury that the foregoing is true and correct.

NOTARY (Necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT    09-13-07
                                DATE

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (day, month, and year)

Notary Signature & Stamp

EXHIBIT
A

**Joseph Lingle v. Star Nissan, Inc.**

---

I. I was employed by Respondent since on or about May 15, 2000. My most recent position was that of Finance Director. At all times, I had satisfactorily met Respondent's reasonable expectations.

II. I am an individual with a disability in that I have been diagnosed with Amyotrophic Lateral Sclerosis (ALS) a/k/a Lou Gehrig's Disease. I informed Mr. Berman, President/Owner, of my disability on or around May 7, 2007. My condition has caused my speech to slow. Despite these issues, I continued to win performance contests during this period.

III. On or about June 25, 2007, Mr. Berman stated that he thought the stress from my position was making my condition worse. He also stated that he wanted me to take a twelve (12) week Family and Medical Leave, and I should think about quitting my job. I was also offered a data entry position making substantially less money than I had been making.

IV. Upon informing my wife of what was said to me, she contacted Mr. Berman. He made statements to her including but not limited to the following:
   a. "I can't have him in finance."
   b. "I can't have him working with customers."
   c. "He needs to take the FMLA leave."
   d. There was a discussion regarding my health insurance, and my ability to keep my demo car for a three month period.

I did not agree to take the leave of absence.

V. On or about June 28-29, 2007, I was forced to take a two (2) week vacation. I had not requested this time off.

VI. On or about July 9, 2007, Mrs. Swift, Human Resources, was informed that I wanted to return to my position of Finance Director. In addition, she was provided with a letter from the ALS Clinic stating that I was capable of performing my duties without restrictions.

VII. On or about July 9, 2007, I had a conversation with Mr. Berman wherein I made statements including but not limited to the following:
   a. I have been to the ALS Clinic, and I have been provided with a letter that states I can perform my job as Finance Director;
   b. I can work;
   c. I can do my job;
   d. I will not be taking Social Security Disability;
   e. Give me a chance to do my job.

In response to my statements, Mr. Berman told me to take the twelve (12) week FMLA Leave and and to accept the other terms he offered me. He also said, "I don't want you in finance."

VIII. Respondent discriminated against me when I was forced to take two (2) weeks of vacation, instructed to take an FMLA leave, told I was not wanted in my position of Finance Director, not allowed to continue performing my job duties thereby effectively terminating me, and only offered an alternative position which would have resulted in a significant reduction in my salary because of my disability Amyotrophic Lateral Sclerosis (ALS) a/k/a Lou Gehrig's Disease or the perception that I had that disability in violation of the American's With Disabilities Act, 42 U.S.C.A. 12101 *et. seq.*

IX. Because of the foregoing conduct and lack of allowing me to perform my job functions despite my requests and tendered medical documentation stating I could do same, I was forced to leave my job due to the intolerable working conditions and was constructively discharged.

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Joseph Lingle<br>62 Mckinley Lane<br>Streamwood, IL 60107 | From: Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |

CERTIFIED MAIL: 7001 0360 0000 0464 2234

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-07919 | Pamela Pribble,<br>Investigator Support Asst | (312) 886-7491 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_John P. Rowe_ (signature)   9/24/07
John P. Rowe,                (Date Mailed)
District Director

cc: STAR NISSAN, INC.

**EXHIBIT B**